IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UBS BANK, USA,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>HAL S. MULLINS,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS<br><br><br><br><br><br>Case No. 2:08-CV-814 TS |

This matter is before the Court on Plaintiff UBS Bank, USA's ("UBS Bank" or "the Bank") Motion to Dismiss Defendant Hal Mullins's ("Mullins" or "Defendant") Counterclaims. After being sued for breach of contract and various other things arising from a Credit Line Agreement, Defendant has made five counterclaims against Plaintiff: Declaratory Relief, Equitable Set Off, Unjust Enrichment, Unconscionability, and Conversion. Either because the Court has already ruled on the issues raised or because the counterclaim fails to state a claim upon which relief can be granted, the Bank's Motion to Dismiss will be GRANTED.

1

## I. Factual Background

Defendant Hal Mullins had two separate accounts with two separate companies. He had a securities account with UBS Financial and a line of credit with UBS Bank, USA. The two are separate and independent corporate entities.[1] The line of credit served as collateral for the securities account. The line of credit was entered into with a Credit Line Agreement ("the Agreement"), which is the subject of this suit.

Mullins was referred by his accountant to Adam Steen, a financial advisor at UBS Financial.[2] In their initial meeting, Steen explained to Mullins the benefits of having a full-service financial advisor and how he could protect his investments from risk.[3] Steen suggested a strategy that involved a "Balanced and Hedged" plan that would limit the possibilities of high returns but provide consistent returns due to diversity and hedging.[4] They agreed and Mullins executed forms to transfer his investment accounts, which would continue to serve as collateral for a line of credit at Bancorp South, to UBS Financial.[5]

A year after setting up his account, Mullins requested a meeting with Steen to discuss selling approximately $2.5 million in securities in his account to pay off his Bancorp South line

---

[1] May 19, 2009 Order, Docket No. 22, p. 2.

[2] Memo in Supp., Exhibit F, Answer to Complaint and Counterclaims, Docket No. 22, at 12.

[3] *Id.*

[4] *Id.*

[5] *Id.* at 13.

of credit.[6] After this meeting, Steen requested some time to formulate a new plan for Mullins.[7] When they met again, Steen told Mullins that after consulting with senior management, he had come up with a new plan.[8] Under this new proposed plan, UBS Financial suggested that instead of using Mullins's $5 million portfolio balance to pay down the Bancorp Credit Line, thereby reducing the amount Mullins could invest at UBS Financial to $2.5 million, UBS Bank would supply Mullins with a replacement $3 million line of credit at a 3.9% fixed rate for two years.[9] Steen explained that to minimize the risk, the new investment strategy would be completely different.[10] Steen would implement a more conservative approach for protection of principal and to offset the interest of the Credit Line.[11] Steen explained that, like many of his retired clients who wanted income, the preferred stock plan would produce income and was "ultra-safe."[12]

Under the new plan, Mullins would receive over $1 million more on his loan, pay lower interest charges, net 3% on his investments and add safety for his investment portfolio.[13] Accordingly, in December of 2006, UBS Bank paid off Mullins's Bancorp South loan and

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 13-14.

[11] *Id.*

[12] *Id.*

[13] *Id.*

3

opened a second line of credit for him.[14] UBS Bank approved Mullins for a credit line of $3.3 million. This credit line was collateralized by investments selected by Steen and UBS Financial, and included Mullins's securities account with UBS Financial.

After Mullins's securities account suffered significant trading losses, UBS Bank liquidated his securities account. Mullins seeks to be compensated for these trading losses by both UBS Financial and UBS Bank. He also seeks to have UBS Financial bear the financial responsibility for the debt he alleges UBS Financial caused to be owed to UBS Bank. Mullins contends that because UBS Financial, and not Mullins, caused the debt to UBS Bank and because the two companies share a parent company and mutually benefitted from Mullins's loss, that Mullins does not owe any debt to UBS Bank.

## II. Procedural History

Plaintiff filed a Complaint containing counts for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and account stated.[15] The Complaint alleged that Defendant failed under the Agreement to pay $280,160.78.

After the Plaintiff filed its Complaint against Defendant, Defendant initiated an arbitration proceeding against UBS Financial, according to the terms of the agreement, before the Financial Industry Regulatory Authority ("FINRA"). Defendant subsequently moved the Court to stay the proceeding pending the outcome of the FINRA arbitration against UBS Financial Services. Based of paragrah 17(c) of the Credit Line Agreement between Mullins and UBS

---

[14]*Id.* at 14-15.

[15]*See* Memo in Supp., Exhibit A, Complaint, Docket No. 22.

4

Bank, which reads:

> "Any arbitration proceeding between the Borrower (or any other Loan Party) and the Securities Intermediary, regardless of whether or not based on circumstances related to any court proceedings between the Bank and the Borrower (or the other Loan Party), will not provide a basis for any stay of the court proceedings,"[16]

the Court denied the motion. The Court also held that "Mullins never challenge[d] the validity or enforceability of this contractual provision and the Court finds no ambiguity in the contractual language [of the "Stay" provision]."[17] Therefore, the Court stated that the contract should be enforced as written.

DEFENDANT'S COUNTERCLAIMS

Defendant has asserted counterclaims that challenge the enforceability of the Credit Line Agreement's forum selection clause and concern the conduct of UBS Financial. Defendant's counterclaims contain five allegations:

(a) Declaratory Relief. Defendant requests that the Court enter a declaratory judgment that the Credit Line Agreement's forum selection clause is unenforceable.

(b) Equitable Set Off. Defendant alleges that his obligations to the Bank should be "setoff" by his claims against UBS Financial Services, which are pending before FINRA.

(c) Unjust Enrichment. Defendant alleges that the Bank has been "unjustly enriched" by UBS Financial's wrongful conduct.

(d) Unconscionability. Defendant alleges that the Credit Line Agreement is

---

[16] Memo in Supp., Exhibit C, Credit Line Account Application and Agreement for Individuals, Docket No. 22, p. 12, ¶ 17(c).

[17] May 19, 2009 Order, Docket No. 17, p. 4.

unconscionable and, therefore, unenforceable.

(e) Conversion.  Defendant alleges that his purported debt to UBS Bank arises solely as a result of UBS Financial's negligence, among other things, and that UBS Bank conspired with UBS Financial to wrongfully convert Defendant's funds.

### III.  Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Defendant as the nonmoving party in this case.[18]  Defendant must provide "enough facts to state a claim for relief that is plausible on its face."[19]  But the court "need not accept conclusory allegations without supporting factual averments."[20]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[21]

The Supreme Court explained that a plaintiff must "nudge [][his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss.[22]  Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the

---

[18]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[19]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (dismissing complaint where Plaintiffs "have not nudged their claims across the line from conceivable to plausible").

[20]*Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

[21]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[22]*Id.*

6

pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.[23]

### IV. Discussion

Plaintiff has moved to dismiss these counterclaims, arguing the counterclaims are barred by the Court's previous order. In *UBS Bank, USA v. Andre Hawit*, Judge Kimball, deciding the same issue on nearly identical facts, dismissed the counterclaims.[24] In *Hawit*, the court "decline[d] to permit Mr. Hawit to relitigate previously decided issues. Specifically, the court . . . already rejected the argument that the forum selection clause in the Credit Line Agreement is unenforceable."[25]

Here, the Court has not specifically ruled on the enforceability of the forum selection clause. As previously discussed, the Court ruled only that the arbitration was insufficient to support a stay, and further, because the Court found no ambiguity in the contractual language, the contract would be enforced as written.

UBS Bank has interpreted the second part of the Court's holding broadly to argue that the Court has specifically ruled that the Choice of Forum clause is enforceable. However, the Choice of Forum clause is separate in the document from the Stay clause and the Court has not

---

[23]*The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[24]*See* 2009 WL 5205990, *UBS Bank, USA v. Andre Hawit*, (D. Utah Dec. 23, 2009).

[25]*Id*. at 6.

yet specifically addressed it. Still, to the extent the counterclaims ask the Court to stay the proceedings based either on the arbitration or the Stay clause, they will be denied, as the Court has already ruled on those issues.

1. Declaratory Relief

Defendant requests that the court enter a declaratory judgment that the Credit Line Agreement's forum selection clause is "unenforceable as it denies [Defendant] a meaningful right to arbitration."[26] As part of this judicial declaration, Defendant also requests that "UBS Bank [be] required to arbitrate its dispute with Mr. Mullins before FINRA."[27] "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . ."[28]

Here, the Agreement specifically addresses this issue in the Choice of Forum clause. By signing it, both Plaintiff and Defendant agreed to "irrevocably submit [] to the jurisdiction of the courts of the Third Judicial District Court for the State of Utah and of the United States District Court for the State of Utah for the purpose of any such action or proceeding as set forth above . .

---

[26] Memo in Supp., Exhibit F, Answer to Complaint and Counterclaims, Docket No. 22, p. 24, ¶ 42.

[27] *Id.* at p. 25, ¶ 44.

[28] 28 U.S.C. 2201(a) (2009).

."²⁹  Because under this section, Defendant has no meaningful right to arbitration and has waived his right to object to the laying of venue in this Court, this counterclaim will be dismissed.

2.  Equitable Set Off

Defendant alleges that his obligations to the Bank should be "setoff" by his claims against UBS Financial Services, which are pending before FINRA.  For relief on this claim, Defendant requests that "UBS should be required to arbitrate its claims against Mr. Mullins before FINRA or this proceeding should be stayed pending a final decision in [his arbitration with UBS Financial]."³⁰

A "setoff" is a counterclaim which a defendant may have against a plaintiff to be used in full or partial satisfaction of whatever is owed.³¹  "The FINRA arbitration concerns Mullins's relationship with UBS Financial Services and the brokerage services they provided.  The UBS Bank litigation concerns Mullins's contractual obligations under the Credit Line Agreement.  Consequently, any claims settled against UBS Financial Services will have no effect on Mullins's obligations under the Credit Line Agreement with UBS Bank."³²  Here, even if Defendant has legitimate claims against UBS Financial, they cannot be setoff against Plaintiff's claims against him because UBS Bank and UBS Financial are separate entities.  For this reason, as well as the

---

²⁹Memo in Supp., Exhibit C, Credit Line Account Application and Agreement for Individuals, Docket No. 22, p. 12, ¶ 17(a) (bold and caps omitted).

³⁰Docket No. 22, at p. 26, ¶ 49.

³¹*Mark VII Financial Consultants Corp. v. Smedley*, 792 P.2d 130 (Utah App.,1990) (citing *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528, 33 S.Ct. 806, 808, (1913)).

³²May 19, 2009 Order, Docket No. 17, at 5-6.

reasons stated in the first claim, this counterclaim will be dismissed.

3. Unjust Enrichment

Defendant alleges that the Bank has been unjustly enriched by UBS Financial's wrongful conduct. It further asserts that "UBS Bank knowingly accepted the benefits . . . and knowingly conspired . . . to deny Hal the ability to assert his claims against UBS Financial in a single action . . ."[33]

The elements of unjust enrichment are: (1) a benefit conferred on the defendant by the plaintiff; (2) acceptance of the benefit by the defendant; and (3) circumstances which make it inequitable for the defendant to retain the benefit.[34] Here, it is uncontested that Plaintiff took the money from Defendant's liquidated assets. This could easily be seen as a benefit that Defendant conferred to Plaintiff. Because there is nothing in the record to suggest that Plaintiff has given the money back to him, they have likely accepted that benefit. As to the third element, the circumstances here show that Defendant contracted with Plaintiff for a loan secured by his UBS Financial securities account[35] and that Plaintiff retained the right to demand at any time full or partial payment of the credit line obligations.[36] Because Defendant has accepted these terms by entering into the contract, it would not be inequitable for Plaintiff to retain the benefit.

---

[33]Memo in Supp., Exhibit F, Answer to Complaint and Counterclaims, Docket No. 22, p. 27, ¶ 53.

[34]*Cargill, Inc. v. Stafford*, 553 F.2d 1222 (10th Cir. 1977).

[35]Memo in Supp., Exhibit C, Credit Line Account Application and Agreement for Individuals, Docket No. 22, p. 5, ¶ A.

[36]*Id*. at ¶ B.

Therefore, Defendant has not stated a claim for unjust enrichment.

Even if Defendant had stated a claim for unjust enrichment, as noted in the prior order, this Court has already held that Defendant's arbitration with UBS Financial and this litigation with UBS Bank are separate actions dealing with separate issues. "Consequently, any claims settled against UBS Financial Services will have no effect on Mullins's obligations under the Credit Line Agreement with UBS Bank."[37]

Because the situation here "involve[s] two separate entities and two separate contractual obligations,"[38] and because Defendant has failed to state a claim for unjust enrichment, this counterclaim will be dismissed.

4. Unconscionability

Defendant alleges that the Credit Line Agreement is unconscionable and, therefore, unenforceable. The Utah Supreme Court has previously instructed that "'[g]ross disparity in terms . . . can support a finding of unconscionability.'"[39] Nonetheless, "[a] party claiming unconscionability bears a heavy burden. The law enables parties to freely contract, establishing terms and allocating risks between them. The law even permits parties to enter into unreasonable contracts or contracts leading to a hardship on one party . . . [Thus,] if a contract term is unreasonable or more advantageous to one party, the contract, without more, is not

---

[37]May 19, 2009 Order, Docket No. 17, at 5-6.

[38]*Id.*

[39]*Sosa v. Paulos*, 924 P.2d 357, 360, 361 (Utah 1996) (quoting *Resource Mgmt. Co. v. Weston Ranch*, 706 P.2d 1028, 1043 (Utah 1985))

unconscionable-the terms must be 'so one-sided as to oppress . . . an innocent party.'"[40]

Here, while Defendant was certainly in a weaker bargaining position, the Court cannot say that the terms are so one-sided as to oppress an innocent party. The terms hold that an action with Plaintiff must be held in a Utah forum. The agreement regarding Defendant's securities account requires an action regarding that account to be arbitrated before FINRA. Even if UBS Bank and UBS Financial were one entity, which they are not, the fact that these are inconsistent with each other does not rise to the level of unconscionability. Defendant may have to incur extra cost to proceed in two separate actions, but he will still have his day in court. Defendant has not stated a claim for unconscionability.

Also, Defendant seeks, as relief for this claim, that the Court "compel UBS Bank to arbitrate its claims against Hal and/or stay this litigation pending a final determination in the FINRA arbitration between Hal and UBS Financial."[41] For the reasons stated in the first claim, because the court has already held that it would not stay the proceeding pending arbitration,[42] and because Defendant has not stated a claim for unconscionability for which relief can be granted, this counterclaim will be dismissed.

5. Conversion.

Defendant alleges that his purported debt to Plaintiff arises solely as a result of UBS

---

[40]*Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998) (quoting *Sosa*, 924 P.2d at 361).

[41]Memo in Supp., Exhibit F, Answer to Complaint and Counterclaims, Docket No. 22, p. 28, ¶ 61.

[42]"Mullins's motion to stay is expressly foreclosed by the contract he entered into with UBS Bank, USA." May 19, 2009 Order, Docket No. 17, at 6.

Financial's negligence, among other things, and that "UBS Bank conspired with UBS Financial to wrongfully convert Mullins's funds and credit line . . . ."[43] In Utah, "a conversion is (1) an act of wilful interference with a chattel, (2) done without lawful justification (3) by which the person entitled thereto is deprived of its use and possession. Although conversion results only from intentional conduct it does not however require a conscious wrongdoing, but only an intent to exercise dominion or control over the goods inconsistent with the owner's right."[44]

As to the second element, the Court finds that, because the Agreement specifically addressed this scenario, Plaintiff did have a lawful justification for liquidating Defendant's assets. The Court, therefore, need not address the other elements, as the Defendant fails to state a claim for conversion upon which relief can be granted. Accordingly, this counterclaim will be dismissed.

---

[43] Memo in Supp., Exhibit F, Answer to Complaint and Counterclaims, Docket No. 22, p. 29, ¶ 66.

[44] *In re Ogden*, 314 F.3d 1190, 1200 (10th Cir. 2002) (citing *Allred v. Hinkley*, 8 Utah 2d 73, 328 P.2d 726, 728 (1958)).

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion to Dismiss Defendant's Counterclaims (Docket No. 21) is GRANTED. Defendant's Counterclaims against Plaintiff are DISMISSED with prejudice.

DATED February 11, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge