IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UBS BANK USA,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br><br>HAL S. MULLINS,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:08-CV-814 TS |

This matter comes before the Court on Plaintiff's Motion for Summary Judgment. Plaintiff moves the Court to enforce the credit line agreement existing between Plaintiff and Defendant. Furthermore, Plaintiff seeks judgment in the amount of $307,503.65, plus continuing interest and attorney's fees and expenses. For the reasons set out below, the Court grants summary judgment on Plaintiff's breach of contract claim and account stated claim and denies Plaintiff's claim of unjust enrichment as moot.

I. FACTUAL BACKGROUND

Plaintiff UBS Bank, USA (the "Bank") and Defendant Hal S. Mullins ("Mullins") entered into a credit line agreement (the "Agreement") dated November 22, 2006.[1] Under the Agreement, the Bank established a demand revolving line of credit by which the Bank could make one or more advances to Mullins upon request.[2] The Bank, subsequently, advanced two loans to Mullins in the principal amounts of $3,000,000 and $402,732 (collectively the "Loans").[3] The terms of the Agreement gave the Bank the right to demand repayment of the Loans plus accrued interest at any time.[4]

Additionally, the terms of the Agreement required Mullins to maintain a collateral account with an aggregate lending value specified by the Bank.[5] If securities were used as collateral and subsequently decreased in value below the required collateral maintenance level, the Agreement granted the Bank the option to sell the securities as repayment for the Loans.[6] Indeed, the Agreement granted the Bank "first priority lien and security interest"[7] in the collateral account.

Mullins pledged securities as collateral for the Loans. In September of 2008, the stocks Mullins pledged to secure his Loans declined in value. As a result, the Bank determined that

---

[1] Docket No. 80, Aff. of Steve Stewart, at 2. Mullins does not directly dispute that he and the Bank are parties to the Agreement. However, Mullins repeatedly tells the Court that the Bank and UBS Financial Services are a part of the same "global family" and that UBS Financial Services acted as an extension of the Bank. *See* Docket No. 81, at 2-5. Nevertheless, this Court has previously held that "[Mullins'] arbitration with UBS Financial and this litigation with [the Bank] are separate actions dealing with separate issues." Docket No. 78, Ex. A. at 11.
[2] Docket No. 80, Aff. of Steve Stewart, at 2.
[3] *Id.*
[4] Docket No. 80, Ex. A. at 5, ¶ B.
[5] *Id.* Ex. A. at 10, § 8(c).
[6] *Id.* Ex. A. at 5, ¶ D.
[7] *Id.* Ex. A. at 9, § 8(a).

Mullins failed to maintain sufficient collateral as required by the Agreement. Consequently, the Bank exercised its right "to liquidate the collateral [and sold the] securities on publicly recognized exchanges," using the "proceeds, totaling $3,126,968.01, to pay down the outstanding amount due and owing under the Loans."[8] In October 2008, the Bank, repeating the liquidation process, sold additional collateral and applied the $12,086.10 in proceeds towards paying down the amount due on the Loans.

Nevertheless, the resulting proceeds fell short of the amount owed leaving "a total deficit balance in Mullins' loan account of $280,160.78 (i.e. $3,402,732 in principal Loans, less $3,139,054.11 in proceeds from the sale of the collateral, plus $16,482.89 in interest accrued on the Loans from September 1, 2008 through October 21, 2008)."[9]

The Bank notified Mullins via letter in September 2008 "that certain amounts remained outstanding under the Loans."[10] Additionally, the Bank demanded Mullins immediately pay the amount due in full including accrued interest. The letter further informed Mullins that the Bank would pursue "certain actions, including but not limited to, pursuing its legal remedies" if Mullins failed to repay the Bank.[11] Accordingly, because Mullins failed to repay the Loans, the Bank filed the present action seeking to recover the amount owed on the Loans, leading to the present pending Motion for Summary Judgment.

---

[8] Docket No. 80, at 3.
[9] *Id.*
[10] *Id.* at 4, Ex. F.
[11] *Id.*

## II. PROCEDURAL HISTORY

The Bank filed a complaint in October 2008, seeking to recover the remaining balance owed on the Loans. Based on Mullins' failure to repay the Loans, the Bank asserted the following causes of action: "breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, and account stated."[12]

In February 2009, Mullins moved to dismiss or stay the Bank's Complaint in light of the subsequent arbitration Mullins filed against UBS Financial Services Inc. ("Financial"), who is not a party in the present action. However, this Court denied Mullins' Motion to dismiss, finding no legal basis for dismissal and that the requested stay was "expressly foreclosed" by the terms of a "stay provision" in the Agreement.[13] The Court found "no ambiguity in the contractual language [of the "Stay" provision]," therefore concluding that the contract should be enforced as written.[14] Finally, the Court took note that Mullins never challenged the validity or enforceability of the contract as written.[15]

In June 2009, Mullins subsequently filed an answer and counterclaims against the Bank, including counterclaims directed at Financial and challenging the enforceability of the Agreement's forum selection clause. In his Answer, however, Mullins admitted he entered into the Agreement with the Bank and did not dispute the express terms of the Agreement.

The Bank responded in July 2009 by moving this Court to dismiss Mullins' counterclaims, which motion was granted in February 2010.[16] In granting the motion, this Court

---

[12] Docket No. 78, at 8.
[13] *Id*. Ex. 1 at 6.
[14] *Id*. Ex. 2 at 5 (alterations in original).
[15] *Id*. Ex. 1 at 4.
[16] *Id*. Ex. 2 at 1.

"held that Mullins is not entitled to a 'setoff' of his claims against [Financial] because 'any claims settled against [Financial] will have no effect on Mullins' obligations under the [Agreement] with [the Bank].'"[17] Furthermore, as it related to Mullins' counterclaim of unjust enrichment, the Court found that

> the circumstances here show that [Mullins] contracted with [the Bank] for a loan secured by his UBS Financial securities account and that [the Bank] retained the right to demand at any time full or partial payment of the credit line obligations. Because [Mullins] has accepted these terms by entering into the contract, it would not be inequitable for [the Bank] to retain the benefit.[18]

Likewise, Mullin's counterclaim for conversion was dismissed by the Court, holding "that the Bank 'had a lawful justification for liquidating [Mullins'] assets.'"[19]

Later in February of 2010, the Bank made its initial motion for summary judgment, but was denied, without prejudice, in light of Rule 56(f) of the Federal Rules of Civil Procedure, thereby allowing Mullins time for discovery. Time for discovery having lapsed, the Bank presently renews its motion. The Bank's Motion for Summary Judgment addresses the following claims[20] against Mullins: breach of contract, unjust enrichment, and account stated.

### III. SUMMARY JUDGMENT STANDARD

"[Defendant] is proceeding *pro se* and, as a result, the [C]ourt construes his pleadings liberally and holds his pleadings to less stringent standards than formal pleadings drafted by

---

[17] Docket No. 78, at 10 (quoting Ex. 2 at 11).
[18] *Id*. (quoting Ex. 2 at 10) (alterations in original).
[19] *Id*. (quoting Ex. 2 at 13) (alternations in original).
[20] Although the Bank's complaint lists a cause of action for "breach of duty of good faith and fair dealing," the Bank does not include that claim in the pending Motion for Summary Judgment. *See* Docket No. 78, at 14, 16, 17.

lawyers."[21] Nevertheless, Defendant's pleadings must still "follow the same rules of procedure that govern other litigants."[22]

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[23] The Court decides whether a genuine dispute as to any material fact exists by determining whether a reasonable jury could return a verdict for the nonmoving party in light of all the evidence presented.[24] Moreover, "summary judgment is 'appropriate' under Rule [56(a)] only when the moving party has met its initial burden of production under Rule 56(c)"; and, "[i]f the evidence produced in support of the summary judgment motion does not meet this burden, 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'"[25]

The Court notes that in the present case Mullins submits no evidence in opposition to the Bank's Motion for Summary Judgment; and therefore, the Court need only determine whether the Bank has met its "initial burden of production under Rule 56(c)"[26] in deciding whether to grant the Motion.

---

[21] *Bryner v. Bryner*, No. 2:09-CV-161, 2009 WL 2920376, at *3 (D. Utah Sept. 11, 2009) (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002)).
[22] *Id*. (citing *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).
[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)); *see also* Fed.R.Civ.P. 56(c)(1) (requiring both moving and nonmoving party to support his or her assertions by "citing to particular parts of materials in the record"); *Dillon v. Fibreboard Corp.*, 919 F.2d 1488, 1490 (10th Cir. 1990) (recognizing nonmoving party "may not rest on his pleadings . . . [but] must set forth specific facts showing that there is a genuine issue for trial).
[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[25] *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 389 U.S. 144, 160 (1970)) (emphasis in original).
[26] *Id*.

## IV. DISCUSSION

A.  BREACH OF CONTRACT

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[27] Furthermore, "[w]hen the existence of a contract and the identity of its parties are not in issue and when the contract provisions are clear and complete, the meaning of the contract can appropriately be resolved by the court on summary judgment."[28] In determining whether to enforce a contract, courts look "to the contract's four corners to determine the parties' intentions, which are controlling."[29] Moreover, "[i]f the language within the four corners of the contract is unambiguous, then a court does not resort to extrinsic evidence of the contract's meaning, and a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law."[30]

As to the present case, it is undisputed that the Agreement is clear and unambiguous on its face.[31] Thus, the Court will look to the contract's four corners to determine the parties' intent.

First, the existence of the Agreement, as well as the Agreement's validity and enforceability, are undisputed.[32] Mullins admits he entered into the Agreement with the Bank,

---

[27] *Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001).
[28] *Morris v. Mountain States Tel & Tel Co.*, 658 P.2d 1199, 1201 (Utah 1983).
[29] *Bakowski v. Mountain States Steel, Inc.*, 52 P.3d 1179, 1184 (Utah 2002).
[30] *Id.*
[31] Docket No. 78, at 15 (citing Ex. 1 at 4). The Bank further argues that this Court has already found the terms of the Agreement unambiguous. However, this is an overly broad statement; indeed, the Court has only ruled on the enforceability of the arbitration clause and the forum selection clause.
[32] Mullins puts forth that Financial and its representative, Adam Steen, acted in unison with the Bank and that Mr. Steen was the acting force in setting up the Agreement. *See* Docket No. 81 at 3. This Court, however, has already addressed these issues in its May 19, 2009 Order, finding that the FINRA arbitration between Mullins and Financial has no bearing on the present litigation between Mullins and the Bank. *See* Docket No. 78, Ex. 1 at 6.

and Mullins expressly admits the key provisions of the Agreement. The Bank, in fact, puts forth that the Agreement evidences Mullins' signature, pursuant to which Mullins requested and received substantial Loans from the Bank.[33]

Second, it is undisputed that the Bank performed its obligations under the Agreement by, among other things, establishing an uncommitted demand revolving line of credit, by which the Bank advanced the Loans to Mullins in the principal amounts of $3,000,000 and $402,732.

Third, the Bank's evidence shows that in or about October 2008, Mullins breached the Agreement by, among other things, failing to repay the Loans upon the Bank's demand. Indeed, the Agreement provides:

> **I understand and agree that UBS Bank USA may demand full or partial payment of the credit line obligations, at its sole option and without cause, at any time**, and that neither fixed rate advances nor variable rate advances are extended for any specific term or duration. **I understand and agree that all advances are subject to collateral maintenance requirements. I understand that UBS Bank USA may, at any time in its discretion, terminate and cancel the credit line regardless of whether or not an event has occurred.**[34]

Mullins agreed to this provision; and furthermore, Mullins never challenges the validity or enforceability of this contractual provision. Mullins attempts to dispute his breach or failure to pay by generally informing the Court of his unsuccessful attempt to work out repayment settlements with the Bank.[35] This allegation, however, only highlights Mullins' failure to pay as required by the Agreement and raises no genuine dispute of material fact that he breached the Agreement.[36]

---

[33] Docket No. 78, at 15 (citing Aff. of Steve Stewart).
[34] Docket No. 80, Ex. A at 5 ¶B (emphasis added).
[35] *See* Docket No. 81, at 5.
[36] *See* Docket No. 80, Ex. A at 5 ¶B (provision granting the Bank right to demand repayment without cause).

Fourth, the Bank's evidence shows that, as a result of Mullin's breach of the Agreement, the Bank has incurred damages and continues to do so. Specifically, after the Bank exercised its right[37] under the Agreement to liquidate the collateral and use the proceeds—totaling $3,139,054.11 to pay down the amounts due and owing under the Loans—there existed as of October 21, 2008, a deficit balance in Mullin's account of $280,160.78. No payments have been made towards the Loans since October 2008 and interest has accrued and is continuing to accrue on that amount. The Bank, consequently, claims damages of $307,503.65, the amounts due and owing on the Loans as of April 29, 2011, plus fees, costs and expenses incurred by the Bank in connection with Mullin's failure and refusal to repay the Loans.[38]

Under the Agreement, Mullins is obligated to pay, among other things, reasonable attorney's fees.[39] Mullins makes a general attempt to dispute the attorney's fees and costs, suggesting the Bank's attorneys requested documents they already possessed in an attempt to burden Mullins with paper work and financially "bleed" him while rushing to file the present Motion.[40] However, Mullins does not specify which discovery requests he believes are duplicative or provide any evidence in support of his allegations.[41] Hence, Mullins fails to show a material dispute of fact on damages by alleging the Bank's attorneys made unnecessary discovery requests.

---

[37] *See* Docket No. 80, Ex A at 5 ¶D (allowing the Bank to liquidate collateral securities should the collateral account "decline below the required collateral maintenance requirements").
[38] Docket No. 78, at 16 (citing Aff. of Steve Stewart).
[39] *See* Docket No. 80, Ex. A. at 6 (defining "Credit Line Obligation").
[40] Docket No. 81, at 5.
[41] *See id*.

Based on the foregoing, the Court finds that the Bank is entitled to summary judgment in its favor on its breach of contract claim. The Court will, therefore, grant the Motion on this ground.

B.    UNJUST ENRICHMENT

The Bank also moves for judgment in its favor on its claim for unjust enrichment. This doctrine, however, "is designed to provide an equitable remedy where one does not exist at law. In other words, if a legal remedy is available, such as breach of an express contract, the law will not imply the equitable remedy of unjust enrichment."[42] Thus, "recovery under an unjust enrichment theory is available only when 'no *enforceable* written or oral contract exists.'"[43] Having granted summary judgment on the Bank's breach of contract claim, the unjust enrichment claim is denied as moot because an enforceable written contract exists.

C.    ACCOUNT STATED

> [T]he essential elements of an account stated include "previous transactions between the parties giving rise to an indebtedness from one to another, an agreement between the parties as to the amount due and the correctness of that amount, and an express or implied promise by the debtor to pay the creditor the amount owing."[44]

In the present case, the Bank has established that there are no disputes of material fact on its claim for an account stated. First, it is undisputed that the Agreement constitutes a former

---

[42] *American Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1192 (Utah 1996) *abrogated on other grounds*, *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 252 (Utah 2009) (quoting *Commercial Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773, 776 (Utah 1977)).
[43] *Wood v. Utah Farm Bureau Ins. Co.*, 19 P.3d 392, 396 (Utah Ct. Ap. 2001) (quoting *Bailey-Allen Co. Inc. v. Kurzet*, 876 P.2d 421, 425 (Utah Ct. Ap. 1994)) (alterations in original).
[44] *DeMentas v. Estate of Tallas*, 764 P.2d 628, 634 (Utah Ct. App. 1988) (citing 1A C.J.S. *Account Stated* § 2 (1985)).

transaction between Mullins and the Bank, giving rise to indebtedness from Mullins to the Bank. Indeed, the purpose of the Agreement was to establish a revolving line of credit whereby the Bank could advance the Loans to Mullins.[45] Second, under the Agreement the parties contracted the correct amount due to be equal to "the outstanding principal amounts of all Advances, together with all accrued but unpaid interest on the outstanding principal amounts, any and all fees or other charges payable in connection with the Advances and any costs of collection (including reasonable attorney's fees)."[46] The Bank calculates Mullins' indebtedness, as of April 29, 2011, as the remaining $307,503.65 due on the Loans (excluding attorney's fees, costs and expenses).[47] Again, Mullins has generally disputed the attorney's fees and costs; but, as mentioned above, Mullins fails to provide evidence in support of his allegations.[48] Finally, it is undisputed that via the Agreement Mullins, the debtor, promised to pay the Bank, the creditor, the amount owing.[49] Consequently, the Court grants summary judgment on the Bank's claim for account stated.

## V. CONCLUSION

Based on the foregoing reasons, it is therefore

---

[45] Docket No. 78, at 3 (citing Aff. of Steve Stewart).
[46] Docket No. 80, Ex. A. at 6 (defining "Credit Line Obligations").
[47] Docket No. 78, at 17-18.
[48] *See* Docket no. 81, at 5.
[49] *Id*. at 18; *see also* Docket No. 78, Ex. A. at 6 (establishing under "Credit line Obligations" the amounts "payable" by the Borrower i.e. Mullins).

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 77) is GRANTED as to the claims for breach of contract and account stated and DENIED as to the claim for unjust enrichment.

DATED   July 18, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge