IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| UBS BANK USA,<br>    Plaintiff,<br><br>vs.<br><br>HAL S. MULLINS,<br>    Defendant. | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES<br><br><br>Case No. 2:08-CV-814 TS |

This matter is before the Court on Plaintiff's Motion for Attorney Fees, Costs and Expenses.[1] As set forth below, the Court will grant in part and deny in part Plaintiff's Motion.

I. BACKGROUND

This matter arises from a contract dispute between Plaintiff UBS Bank, USA (the "Bank") and Defendant Hal S. Mullins ("Mullins"). The Bank and Mullins entered into a credit line agreement (the "Agreement") dated November 22, 2006, in which the Bank established a demand revolving line of credit for Mullins. The Bank subsequently advanced two loans to Mullins in the principal amounts of $3,000,000 and $402,732 (collectively, the "Loans").

Under the terms of the Agreement, the Bank was obligated to make advances to Mullins upon his request, but the Bank had the right to demand repayment of the Loans plus accrued interest at any time. The Agreement also called for Mullins to maintain a collateral account with an aggregate lending value specified by the Bank. If securities were used as collateral and subsequently decreased below the required maintenance level, the Agreement granted the Bank

---

[1] Docket No. 94.

1

the option to sell the securities as repayment for the Loans. Mullins pledged securities as collateral for the Loans, and when those stocks declined below the collateral maintenance level, the Bank exercised its right to liquidate the collateral and sold the securities on publicly recognized exchanges. The resulting proceeds, however, fell short of the amount Mullins owed the Bank by a deficit of $280,160.78. After Mullins refused to repay the deficit, the Bank filed an action to recover the amount owed on the Loans, plus fees, costs, and expenses incurred by the Bank in connection with Mullins' failure and refusal to repay the loans.

In an Order dated July 18, 2011, the Court granted summary judgment in favor of the Bank on its breach of contract and account stated claims and denied Plaintiff's claim for unjust enrichment.[2] As a result of this ruling, the Court awarded damages in the amount of $307,503.65, plus interest, costs, and attorneys' fees.

This Court included attorneys' fees and costs in the damage award because the Agreement specifically provided that Mullins would pay "any and all fees or other charges payable in connection with the Advances and any costs of collection (including reasonable attorney's fees)." Although Mullins generally contested the award of attorneys' fees, the Court rejected Mullins' arguments as insufficient to support his allegations. On September 29, 2011, the Court entered a judgment in favor of the Bank against Mullins in the amount of $311,198.40, plus attorneys' fees, costs and post-judgment interest. Consequently, the Bank has now filed the instant Motion, wherein they seek their fees and costs.

### III. DISCUSSION

Plaintiff's Motion seeks fees and costs in the amount of $140,570.56, for a total amended judgment of $451,768.96. During this case the Bank was represented by two law firms: Riker

---

[2] Docket No. 90.

Danzig Scherer Hyland Perretti LLP ("Riker Danzig") and Anderson & Karrenberg, P.C. ("Anderson"). As primary counsel, Riker Danzig charged attorneys' fees of $133,342 at an blended rate of $290 per hour, and incurred costs of $7,752.49, for a total of $141,094.49. Anderson charged $3,982.50 in attorneys' fees, at an hourly rate of $210 per hour, and incurred costs of $816.81, for a total of $4,799.31. The Bank has not requested recovery of fees and costs that the Bank incurred in connection with the *pro hac vice* admission of its New Jersey counsel in this action. In total, Bank seeks fees and costs in the amount of $140,570.56.

Mullins argues that Bank's counsel charged extreme and excessive attorneys' fees. Specifically, he argues that Bank's counsel charged for duplicative work, and "on-the-job-training" fees for inexperienced attorneys unfamiliar with Utah law. In addition, he contends that the higher billable rate charged by out-of-state counsel—Riker Danzig—was unreasonable, especially because the matter could have been handled by local counsel at lower hourly rates. Finally, Mullins argues that the exhibits supporting Plaintiff's Motion for attorneys' fees are redacted to such an extent that it is impossible to tell whether some fee charges are justified.

In response, the Bank argues that Mullins has failed to provide any specific examples to support his assertion that the Bank's legal expenses are excessive and duplicative. The Bank contends that a significant portion of the its legal fees are attributable to claims and issues that Mullins, not the Bank, injected into this straightforward collection action. As to Mullins' assertion that some attorneys representing the Bank are "inexperienced" and "unqualified," the Bank argues that the submitted billing records show that the Bank has not charged for training associates and all attorneys working on this matter were either partners or associates who had been practicing for many years. Finally, the Bank contends that all costs associated with New Jersey attorneys practicing in Utah were omitted from their Motion for attorneys' fees and costs.

Each argument will be addressed in turn.

A.  REASONABLENESS OF ATTORNEYS' FEES

"Attorney's fees awarded pursuant to a contract should not be given scrutiny to the same degree as fees awarded in a statutory context, but should be awarded consistent with the contractual purpose of giving the parties the benefit of their bargain."[3] "Where attorney's fees are provided by contract, a trial court does not possess the same degree of equitable discretion to deny such fees as it has when applying a statute providing for a discretionary award."[4] Nevertheless, a court may reduce the contractual attorney's fees claimed if the court finds such award "would be inequitable or unreasonable."[5]

In evaluating the reasonableness of a fee application under Utah law,[6] a court must consider several factors, including:

> the amount in controversy; the extent of services rendered; the relationship of the fee to the amount recovered; the novelty and difficulty of the issues involved; the overall result achieved; the necessity of initiating a lawsuit to vindicate rights under the contract; the difficulty of the litigation; the efficiency of the attorneys in presenting the case; the reasonableness of the hours spent on the case; the fee customarily charged in the locality for similar services; and the expertise and experience of the attorneys.[7]

---

[3] *Mark Tech. Corp. v. Utah Res. Int'l, Inc.*, No. 2:03CV831 DAK, 2006 WL 1073559, at *1 (D. Utah Apr. 20, 2006) (unpublished); *see U.S. for Use of C.J.C. Inc. v. W. States Mech. Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir. 1987).

[4] *U.S. for Use of C.J.C. Inc.*, 834 F.2d at 1548.

[5] *Id.*

[6] When considering whether a fee is unreasonable, a trial court may consider "the familiar factors from the federal cases awarding fees in a statutory context." *Mark Tech. Corp.*, 2006 WL 1073559, at *1. "The district court may choose to use these factors, not to compute a reasonable fee, but to assist in determining if the fees claimed are unreasonable or inequitable." *Id.*

[7] *See Dixie State Bank v. Bracken*, 764 P.2d 985, 989 (Utah 1988).

1. REASONABLE BILLABLE HOUR RATES

Mullins argues that the hourly rates charged by Bank's New Jersey counsel—Riker Danzig—are excessive by Salt Lake City standards and, therefore, he should not be required to bear these additional costs.  Under Utah law, courts have assessed the reasonableness of fees in light of the "fee customarily charged in the locality for similar services."[8] In *Mark Technologies Corp. v. Utah Resources International, Inc.*,[9] the court limited the amount of attorney's fees awarded to Chicago-based counsel to the prevailing Salt Lake City hourly rates because the "subject matter of the litigation [was] not so unusual that it required special skills that only an out-of-state lawyer possesses."[10] Similarly, the Tenth Circuit has, when determining the reasonable rate of compensation, examined "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time."[11]

Here, the Court finds that there is some support for the contention that the hourly rates for New Jersey counsel are excessive by Salt Lake City standards.  The partner at Bank's Salt Lake City counsel—Anderson—charged an hourly rate of $210, which is $80 per hour less than the blended rate charged by Riker Danzig.  In addition, the subject matter of the litigation was not so difficult or complex as to warrant the specialized services of out-of-state counsel.  Although each party has the right to choose its own counsel, the Court finds it would be "inappropriate to require the opposing party to bear these additional costs associated with such a decision when

---

[8] *Id*; *see also Feldman v. Prudential Ins. Co. of Am.*, No. 2:06CV315 DAK, 2008 WL 376252, at *1 (D. Utah Feb. 11, 2008) (unpublished); *Mark Tech. Corp.,* 2006 WL 1073559, at *1-2.

[9] 2006 WL 1073559.

[10] *Id*. at *1-2.

[11] *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).

local firms were available to handle the litigation."[12] Therefore, the Court finds that Riker Danzig's hourly rates should be set at prevailing Salt Lake City rates.

Mullins also argues that Bank's counsel charged "on-the-job-training-costs" for inexperienced attorneys. However, Mullins does not provide any specific evidence to support this assertion, and the Declaration of Stephen P. Horvat provides credible evidence that the Bank's attorneys were competent and experienced. In fact, the Bank's attorneys are either partners at their firms or associates who have been practicing for a number of years. And although Riker Danzig billed at a blended hourly rate—a billing technique that charges clients the same hourly rate regardless of whether a partner or associate worked on the matter—the Court finds that there is no evidence to suggest that this rate was unreasonable for any of the associates or partners participating in this litigation.

Mullins does not argue that the hourly rate charged by Anderson was excessive. The only evidence that the Bank provides for the hourly rate charged by Anderson is the Declaration of Stephen P. Horvat, an attorney for Anderson. Although a court may give less weight to self-interested testimony[13] and rely upon its own knowledge of the prevailing market rate[14] when determining whether such fees are reasonable, the Court finds that the hourly rate of $210 charged by Anderson is reasonable.

Because the hourly rate of $210 provided by Anderson is evidence of the prevailing market rate for a partner in Salt Lake City, and the Court finds that this rate is reasonable based

---

[12] *Mark Tech. Corp.,* 2006 WL 1073559, at *2; *see also Ramos*, 713 F.2d at 555.

[13] *See Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987).

[14] *Id*.; *Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1257 (10th Cir. 1998) (Only if the district court "does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate").

upon its own knowledge of the prevailing market rate, the Court will apply this hourly rate to the attorneys from Riker Danzig.

2. REASONABLE AMOUNT OF HOURS BILLED

Mullins further contends, without providing any specific support, that Bank's counsel billed an unreasonable amount of hours on this case. After reviewing the detailed, contemporaneous time records supplied by Bank's counsel, the Court finds that the amount of hours billed was reasonable. A significant portion of the Bank's legal fees are attributable to claims and issues that Mullins, not the Bank, injected into this collection action. These include Mullins' time consuming discovery requests, counterclaims against the Bank, and filing of an unsuccessful motion to dismiss or stay the Bank's Complaint. For these reasons, the Court finds that Bank's counsel expended a reasonable amount of hours billed on this matter.

3. REDACTION

Finally, Mullins claims that in the 109-page invoice submitted with Plaintiff's Motion for attorneys' fees, there is a significant amount of invoices improperly redacted so as to prevent one from ascertaining the reasonableness of the fees incurred. While the invoice does contain redactions, the information provided is more than sufficient for the Court to determine the reasonableness of the attorneys' fees sought. As a result, the Court rejects Mullins' argument on this point.

IV. CONCLUSION

Based on the foregoing, it is therefore

ORDERED that Plaintiff's Motion for Attorney Fees, Costs and Expenses (Docket No. 94) is GRANTED IN PART AND DENIED IN PART. Fees and costs are awarded as follows. Riker Danzig's attorneys are billed at a rate of $210 per hour, for 459.80 hours, for a total amount of $95,927.[15] Anderson's attorney is billed at a rate of $210 per hour, for 18.75 hours, for a total amount of $3,982.50. Total costs as requested are $3,877.06. And thus, Plaintiff's counsel is entitled to total attorneys' fees and costs in the amount of $103,786.56.

DATED February 15, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[15] This figure reflects a $631 reduction related to the *pro hac vice* admission of Danzig's counsel.